**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **VICKI DANIELS,** | |
| **Plaintiff,** | |
| v. | |
| **PFIZER, INC., GREENSTONE, LLC, VIATRIS INC., PRASCO, LLC, PHARMACIA LLC, PHARMACIA & UPJOHN COMPANY, LLC, and WALGREENS CO., INC.,** | Case No. |
| **Defendants.** | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Greenstone LLC ("Greenstone") and Viatris Inc. ("Viatris") (together, "Removing Defendants") hereby remove and give notice of the removal of the above-styled action from the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, to the United States District Court for the Southern District of Illinois. In support of removal, Removing Defendants state further:

**I.   INTRODUCTION**

1.   Depo-Provera is the brand name for depot medroxyprogesterone acetate ("DMPA"), an FDA-approved prescription-only medication. The drug was first marketed in United States for the prevention of pregnancy in 1992 by way of FDA's approval of New Drug Application ("NDA") No. 20-246, which is held by Defendant Pfizer Inc. ("Pfizer").

2.   This is a product-liability action in which Plaintiff alleges that her use of brand-name Depo-Provera and/or generic DMPA over an unspecified period of time beginning in 1992 caused meningioma among other personal injuries. (Ex. A, Compl. ¶¶ 2, 94.)

1

3.  Plaintiff initiated this action in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on December 31, 2024.

4.  The Complaint names Pfizer as the manufacturer of brand-name Depo-Provera, Greenstone and Prasco, LLC ("Prasco") as distributors of authorized generic DMPA, and Walgreens Co., Inc. ("Walgreens") as an entity that sold Depo-Provera to Plaintiff.

5.  Although ostensibly stating seven causes of action, Plaintiff's pleading posits just two theories of liability: (i) failure to warn; and (ii) design defect.

6.  First, Plaintiff claims the label for brand-name Depo-Provera—and, by extension, generic DMPA—was inadequate to warn of the alleged risk of developing meningioma with long-term use. (*See, e.g.*, Compl. ¶ 136 ["Defendants marketed promoted, distributed and sold an unreasonably dangerous and defective prescription drug, Depo-Provera, [. . .] without adequate warnings and other clinically relevant information and data[.]"].) Plaintiff also asserts conclusory allegations that "Defendants negligently provided Plaintiff, Plaintiffs' Healthcare Providers, and the general medical community with false or incorrect information" which was "intended to and did in fact induce Plaintiff and Plaintiff's Healthcare Providers to request, recommend, purchase, and prescribe Depo-Provera." (*Id.* ¶¶ 217, 219.) According to Plaintiff, had they known of the alleged risk, her physicians "would not have used or prescribed Depo-Provera." (*Id.* ¶ 227.)

7.  Second, Plaintiff alleges that brand-name Depo-Provera—and, by extension, generic DMPA—was defective in design because it "was designed in such a way that it posed an unreasonable risk of intracranial meningioma and Defendants placed and kept Depo-Provera on the market despite Depo-Provera being in a defective condition." (Compl. ¶ 159.)

8.  Walgreens, however, had no role in the labeling or design of Depo-Provera. Walgreens' only involvement is that it is alleged to be a pharmacy where Plaintiff filled some of

her prescriptions for Depo-Provera.

9. Because Plaintiff has no cognizable claim against Walgreens, it has been fraudulently joined in this action.

10. Removing Defendants are aware of 76 actions pending in 20 federal District Courts in which the plaintiff is alleging personal injuries relating to the use of Depo-Provera ("Depo-Provera cases") and alleges failure-to-warn and design-defect theories against Pfizer and some combination of Viatris, Greenstone, and Prasco.

11. On November 26, 2024, certain plaintiffs in the Depo-Provera cases petitioned the Judicial Panel on Multidistrict Litigation ("JPML") to establish a Multidistrict Litigation ("MDL") (the "Petition"). *See generally In re Depo-Provera (Depot Medroxyprogesterone Acetate) Products Liability Litigation*, MDL No. 3140, at Dkt. 1, Pls.' Pet. (J.P.M.L. Nov. 26, 2024). Argument before the JPML occurred on January 30, 2025, and on February 7, 2025, the JPML issued a Transfer Order consolidating the Depo-Provera litigation in the U.S. District Court for the Northern District of Florida before the Hon. Judge M. Casey Rodgers (the "*Depo-Provera* MDL"). *See id.* at Dkt. 120, Or.

12. The claims against the Removing Defendants, Pfizer, and Prasco, like those in the Petition, belong in federal court and should be litigated alongside the many similar cases in the *Depo-Provera* MDL.

13. Because, when Walgreens is disregarded, there exists complete diversity of citizenship among the remaining parties and the matter in controversy exceeds $75,000, the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

**II.    JURISDICTIONAL BASES FOR REMOVAL**

    **A.    Complete Diversity**

14. According to the Complaint, Plaintiff is a citizen of Illinois. (Compl. ¶ 8.)

15. A corporation is considered a citizen of the state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1).

16. A limited liability company is a citizen of every state of which its owners/members are citizens. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

17. Defendant Pfizer Inc. is, at the time of removal, and was, at the time this action was initiated, a Delaware corporation with its principal place of business in New York. Pfizer Inc. is therefore considered a citizen of New York and Delaware for purposes of diversity jurisdiction.

18. Defendant Greenstone is, at the time of removal, and was, at the time this action was initiated, a limited liability company organized and existing under the law of Delaware. It has one member, Upjohn US 2 LLC, a limited liability company organized and existing under the law of Delaware. Upjohn US 2 LLC has one member, Upjohn US Holdings Inc., which is a corporation organized and existing under the law of Delaware with a principal place of business in Pennsylvania. For purposes of diversity jurisdiction, therefore, Greenstone is a citizen of Delaware and Pennsylvania.

19. Defendant Viatris is, at the time of removal, and was, at the time this action was initiated, a Delaware corporation with its principal place of business in Pennsylvania. Viatris therefore is considered a citizen of Delaware and Pennsylvania for purposes of diversity jurisdiction.[1]

---

[1] Viatris has never held an approved application to market Depo-Provera or DMPA, nor has it ever designed, manufactured, distributed, or sold the medication. Its only alleged involvement in this litigation is that, in November 2020, Greenstone became an indirectly wholly owned subsidiary of Viatris. (Compl. ¶ 22.) But, by that time, Greenstone had already ceased its role as distributor of generic DMPA. (*Id.* ¶ 25.) While Viatris is not a proper party to this litigation, its presence does not affect the Court's subject matter jurisdiction and therefore, if necessary, the issue can be resolved by the MDL court.

20. Defendant Prasco is, at the time of removal, and was, at the time this action was initiated, an Ohio limited liability company, with its principal place of business in Ohio. Prasco's sole member is Scion Companies, LLC, which is an Ohio limited liability company, with its principal place of business in Ohio. The members of Scion Companies, LLC are Ohio and South Dakota citizens. Prasco therefore is considered a citizen of Ohio and South Dakota for purposes of diversity jurisdiction.

21. Defendant Pharmacia & Upjohn Company, LLC is a limited liability company whose sole member is Defendant Pharmacia LLC. Pharmacia LLC is a limited liability company whose sole member is Wyeth Holdings LLC. Wyeth Holdings LLC is a limited liability company whose sole member is Anacor Pharmaceuticals, LLC. Anacor Pharmaceuticals, LLC is a limited liability company whose sole member is Pfizer MAP Holding, Inc. Pfizer MAP Holding, Inc. is a Delaware corporation with a principal place of business in New York. Pharmacia & Upjohn Company, LLC and Pharmacia LLC therefore are both considered citizens of Delaware and New York for the purposes of diversity jurisdiction.

22. Removing Defendants acknowledge that, on the face of the Complaint, Walgreens is alleged to be an Illinois citizen and therefore non-diverse to Plaintiff.

23. The citizenship of Walgreens, however, is properly disregarded for purposes of evaluating diversity jurisdiction because it has been fraudulently joined to this action.

24. Fraudulent joinder is a well-recognized exception to the requirement of complete diversity. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013).

25. A defendant is fraudulently joined and its citizenship is ignored for purposes of determining diversity where "there exists no 'reasonable possibility' that a state court would rule against the [in-state] defendant." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878

5

(7th Cir. 1999) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)); *Clay v. Philip Morris USA, Inc.*, No. 18-cv-3549, 2018 WL 11198356, at *1 (N.D. Ill. Nov. 6, 2018) ("[T]he district court must ask whether there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." [internal quotation marks omitted]).

26. Walgreens is a retail pharmacy. Plaintiff alleges she received Depo-Provera from Walgreens and non-party Planned Parenthood. (Compl. ¶ 17.)

27. While Plaintiff lodges Counts II-VII against "Defendants" generally, Plaintiff's theory of liability as to Walgreens is necessarily premised upon an alleged failure to warn Plaintiff of the risk of meningioma attendant to the ingestion of Depo-Provera, as Plaintiff does not come forward with any allegation that Walgreens designed or labeled Depo-Provera or DMPA.

28. In Illinois, a pharmacy's duty to warn customers of allegedly dangerous side effects of prescription drugs is "regarded as a narrow one." *Urbaniak v. American Drug Stores, LLC*, 126 N.E.3d 561, 566 (Ill. App. 2019).

29. The Illinois Supreme Court established the scope of a pharmacy's duty to warn in *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002). In *Happel*, a prescription error case, the Illinois Supreme Court held that a pharmacy could be liable for dispensing drugs to a customer where it knew of the customer's allergies, knew the drug was contraindicated, and knew that death or injury was substantially certain to result. *Id.* at 187-90.

30. *Happel* together with the Seventh Circuit's decision in *Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011), establish that pharmacies have no general duty to warn customers of potential side effects of drugs.

31. In *Walton*, the Seventh Circuit recognized that the learned intermediary doctrine must apply to pharmacies under Illinois law because they cannot be expected to warn customers

of possible defects and dangers of the drugs they sell. The court posited that it "would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs." *Id*.

32. *Walton* recognized just one limited exception to the applicability of the learned intermediary doctrine: A pharmacy has a duty to warn its customer of potential risks of a drug if the pharmacy knows, without investigation, either that (i) its customer has a susceptibility to a particular risk of a drug due to the customer's prescription of another drug that it sells him/her, or (ii) the customer has a preexisting physical or mental condition that makes the drug contraindicated for the customer. *Id.*

33. Courts in this jurisdiction apply *Walton* and *Happel* to find that a pharmacy is fraudulently joined in a product-liability action unless a pharmacy has some patient-specific information to trigger a duty to warn or the pharmacy was independently negligent in the handling of the medication, thereby contributing to the plaintiff's harm. *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2100, 2012 WL 2135281, at *6-7 (S.D. Ill. June 12, 2012) (finding pharmacy fraudulently joined to product-liability action because pharmacy had no duty to warn patient regarding alleged risks associated with prescription drug); *Aranda v. Walgreen Co.*, No. 3:12-cv-337, 2012 WL 1884737, at *5 (S.D. Ill. May 23, 2012) (same); *Martinez v. Mylan Pharmaceuticals, Inc.*, No. 21-cv-6329 (N.D. Ill. June 15, 2022) (same).

34. Here, Plaintiff does not allege Walgreens was aware of any patient-specific susceptibilities or preexisting conditions that would have rendered Depo-Provera contraindicated for her use, nor does Plaintiff suggest that Walgreens was negligent in its handling of the medication, thereby contributing to Plaintiff's harm.

35. Finally, Plaintiff cannot recover against Walgreens under design defect because Walgreens' only role in this case is as the retailer that dispensed Depo-Provera to Plaintiff.

36. Nearly 50 paragraphs in the Complaint are dedicated to allegations of history of the development of Depo-Provera as well as the mergers and acquisitions of the companies that created, owned, and distributed the product. (Compl. ¶¶ 1-21, 58-74.)

37. Walgreens is not alleged to have had any role in the design, development, manufacture, or marketing of Depo-Provera. It did not hold the NDA for Depo-Provera or an Abbreviated New Drug Application for generic DMPA.

38. Walgreens is not alleged to have had any control over Depo-Provera's labeling. While outlining her criticisms regarding the labeling of Depo-Provera, Plaintiff makes no mention of Walgreens. (*Id.* ¶¶ 75-84.) Instead, these allegations relate primarily to the conduct of Pfizer, the brand manufacturer and NDA holder, as reflected by the headings, "Defendant Pfizer Has at All Relevant Times Been Responsible for the Depo-Provera Label," and, "Defendant Pfizer Controlled the 'Authorized Generics.'" (*Id.* pp. 22, 24.)

39. In contrast, Walgreens is alleged only to have administered Depo-Provera to Plaintiff. (*Id.* ¶¶ 17, 30, 96.) There is not a single averment regarding the safety and effectiveness of Depo-Provera that is attributed by Plaintiff to Walgreens. Indeed, Plaintiff expressly alleges that her medical providers were misled by misrepresentations in the labeling regarding the risks associated with the long-term use of Depo-Provera. (*Id.* ¶ 253 ["In reliance upon the false and negligent misrepresentations and omissions made by the Defendants, Plaintiff and Plaintiff's Healthcare Providers were induced to, and did use Depo-Provera, thereby causing Plaintiff to endure severe and permanent injuries."].) *See Happel*, 766 N.E.2d at 1123 ("A duty to warn exists where there is unequal knowledge, actual or constructive [of a dangerous condition], and the

defendant[,] possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." [internal quotations and citation omitted]).

40. As a result, Walgreens owed no duty to Plaintiff relating to the labeling of or representations about the risks associated with using Depo-Provera, which bars any recovery on Plaintiff's failure-to-warn, negligence, and misrepresentation claims. *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 692 F. Supp. 2d 1025 (S.D. Ill. Feb. 26, 2010) (holding plaintiff's boilerplate fraud claim against pharmacy could not succeed).

41. Accordingly, Walgreens is fraudulently joined and its citizenship must be disregarded for diversity purposes. And, as established above, complete diversity exists among the remaining parties because Plaintiff is a citizen of Illinois and none of the remaining Defendants is a citizen of Illinois.

### B. The Amount in Controversy Exceeds $75,000

42. Plaintiff's claims satisfy the amount in controversy requirement set forth in 28 U.S.C. § 1332(a).

43. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court," and "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 553–54.

44. Plaintiff alleges that her use of Depo-Provera caused her to develop gradual proptosis, blurred vision in her left eye, meningioma requiring surgery, radiation therapy, and strabismus requiring eye surgery. She alleges that she will have life-long debilitation from the

meningioma, including decreased vision, dizziness, muscle problems, depression, and hearing loss. (Compl. ¶¶ 98, 100, 102, 107-110.)

45. Plaintiff's Complaint demands actual or compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs and expenses, statutory damages, and any further relief the Court may deem just and proper. (*See generally*, Compl.)

46. Courts have routinely found that allegations of serious injury in product-liability actions, such as those Plaintiff makes here, support an inference that the amount-in-controversy requirement has been met. *See Mullaney v. Endogastric Sols. Inc.*, No. 11-cv-62056, 2011 WL 4975904, at *2 (S.D. Fla. Oct. 19, 2011) (inferring that amount in controversy requirement was met where plaintiff alleged that he underwent "surgical intervention that required additional life saving medical treatment" and suffered "serious, permanent and disabling injuries"); *In re Yasmin & Yaz (Drospirenone) Mktg. Sales Practices & Prod. Liab. Litig.*, 692 F. Supp. 2d 1025, 1040 (S.D. Ill. 2010) ("Given the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the evidence that the amount in controversy has been established.").

47. "In the parlance of product liability suits . . . [c]ourts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceed the jurisdictional amount." *McCoy by Webb v. General Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002).

48. Based on Plaintiff's allegations, Removing Defendants allege the amount in controversy exceeds $75,000, exclusive of interest and costs.

III. **ALL PROCEDURAL REQUIREMENTS OF REMOVAL HAVE BEEN SATISFIED**

49. Generally, a notice of removal must be filed within 30 days after the receipt by defendant of the initial pleading. 28 U.S.C. § 1446(b)(1). The Supreme Court has clarified that the

30-day period does not begin to run until the plaintiff has effectuated formal service of process. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

50. This removal is timely because it is filed within 30 days of service of process on Removing Defendants.

51. Removal pursuant to 28 U.S.C. § 1441(a) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

52. The consent of Walgreens is not required because it is fraudulently joined. *Darras v. Trans World Airlines, Inc.*, 617 F. Supp. 1068, 1069 (N.D. Ill. 1985).

53. All other Defendants consent to this removal. (*See* Ex. B, Pfizer Defs.' Consent; Ex. C, Prasco's Consent.)

54. Venue is proper in this Court, because it is the federal judicial district embracing the Circuit Court of St. Clair County, Illinois, where this lawsuit was originally filed. 28 U.S.C. §§ 93(a)(1), 1441(a). St. Clair County is in the East St. Louis Division of the Southern District of Illinois.

55. Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings and other papers served upon the Removing Defendants are collectively attached hereto as Exhibit D. A docket sheet for the underlying state court action is attached as Exhibit E.

56. The Removing Defendants are providing Plaintiff with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

57. Pursuant to 28 U.S.C. § 1446(a), a copy of this Notice of Removal is being served on Plaintiff and filed with the Clerk of the Circuit Court of St. Clair County, Illinois.

58. Removing Defendants' corporate disclosure statements are attached as Exhibit F (Greenstone) and Exhibit G (Viatris).

59. No previous application has been made for the relief requested herein.

## IV. RESERVATIONS AND REQUEST FOR ORAL ARGUMENT

60. If any question arises as to the propriety of the removal of this action, Removing Defendants respectfully request the opportunity to present a brief, evidence, and oral argument in support of their position that this case is removable.

61. Nothing in this Notice of Removal shall be interpreted as a waiver, estoppel, preclusion, or relinquishment of Defendants' ability or right to assert any claim, counterclaim, crossclaim, third-party claim, defense, or affirmative matter, including, but not limited to, (1) lack of personal jurisdiction; (2) improper venue; (3) insufficiency of process; (4) insufficiency and/or failure of service of process; (5) improper joinder of claims and/or parties; (6) failure to state a claim; (7) failure to join an indispensable party; (8) standing; (9) waiver; (10) failure to exhaust administrative remedies; or (11) any other pertinent claim or defense available under Rule 12 of the Federal Rules of Civil Procedure, any state or federal statute, or otherwise.

## V. JURY DEMAND

62. Removing Defendants demand a trial by jury on all issues so triable.

WHEREFORE, Defendants Greenstone LLC and Viatris Inc. respectfully request this Honorable Court to exercise jurisdiction over the claims asserted by Plaintiff and to take any other action necessary to effectuate the removal of this action to the United States District Court for the Southern District of Illinois, East St. Louis Division.

Dated: February 7, 2025                                Respectfully submitted,

                                                          SWANSON, MARTIN & BELL, LLP

        */s/ Gary C. Pinter*
Gary C. Pinter
103 W. Vandalia Street, Suite 215
Edwardsville, IL 62025
Telephone: (618) 655-3131
gpinter@smbtrials.com

Andrew A. Lothson (*pro hac* to be sought)
330 North Wabash, Suite 3300
Chicago, IL 60611
Telephone: (312) 923-8274
alothson@smbtrials.com
blothson@smbtrials.com


PIETRAGALLO GORDON ALFANO BOSICK
& RASPANTI, LLP

Jason M. Reefer (*pro hac* to be sought)
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: (412) 263-1840
jmr@pietragallo.com

*Attorneys for Defendants Greenstone LLC and Viatris Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 7, 2025, I electronically filed the foregoing Notice of Removal with the Clerk of Court using the CM/ECF system which will send notification to all parties of record. A copy of the foregoing Notice of Removal is also being served on this same day via e-mail to the following:

David Cates
advice@cateslaw.com
The Cates Law Firm, LLC
216 West Pointe Drive, Suite A
Swansea, IL 62226

Ashley Keller
ack@kellerpostman.com
Warren D. Postman
wdp@kellerpostman.com
Nicole C. Berg
ncb@kellerpostman.com
John James Snidow
jj.snidow@kellerpostman.com
Keller Postman LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606

                                              */s/ Gary C. Pinter*
                                              Gary Pinter