IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| VICKI DANIELS,<br><br>    *Plaintiff*,<br><br>v.<br><br>PFIZER INC., GREENSTONE LLC, VIATRIS INC., PRASCO, LLC, PHARMACIA LLC, PHARMACIA & UPJOHN COMPANY, LLC, and WALGREENS CO., INC.,<br><br>    *Defendants*. | Case No.: 3:25-cv-00188 |

**PLAINTIFF'S EMERGENCY MOTION TO REMAND**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.    The Forum Defendant Rule Prohibits Removal .......................................................... 2

    II.   There Is No Diversity Jurisdiction Because Walgreens Is a Properly Joined Defendant. ... 3

        A.    Walgreens Is Strictly Liable for Plaintiff's Injuries and Not Excused By the Learned Intermediary Defense. ................................................................................... 5

            1)    Walgreens Is Strictly Liable for Plaintiff's Injuries. .................................... 6

            2)    Even if Walgreens May Ultimately Avoid Liability, It Is a Proper Defendant That Was Not Fraudulently Joined. ............................................................. 7

            3)    Walgreens Had a Duty to Warn Plaintiff's Physician ............................... 10

        B.    Walgreens Knew or Should Have Known That Plaintiff Was Susceptible to Depo-Provera and Had a Duty to Warn Plaintiff or Her Physician. ..................................... 11

        C.    Learned Intermediary Is Common to Non-Diverse Defendants. ................................ 13

        D.    Fraudulent Joinder Is Extra Textual and Should Not Be Applied. .............................. 15

CONCLUSION .......................................................................................................................... 16

# INTRODUCTION

"A district court's 'first duty in every suit' is to establish the existence of subject-matter jurisdiction." *Benson v. Unilever U.S., Inc.*, 884 F. Supp. 2d 708, 710 (S.D. Ill. 2012). Without jurisdiction, the federal court **must** remand a removed case to state court. This case must return to the Illinois Circuit Court.

Plaintiff Daniels is a citizen of Illinois who filed her complaint against Defendants, including Walgreens, also a citizen of Illinois, in the Illinois Circuit Court for St. Clair County. Under jurisdictional principles that have been well-settled since 1806, there is no federal diversity jurisdiction. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). When, as here, the federal "district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

To dodge this statutory command, Defendants' only legal argument against jurisdiction is so-called "fraudulent joinder," under which a defendant against whom a plaintiff *could not possibly* recover can be disregarded. But Walgreens is an Illinois resident, and the forum defendant rule prohibits removal when there is a forum defendant. Furthermore, the fraudulent-joinder argument fails for multiple, independent reasons, since Plaintiff purchased a harmful drug from Walgreens, which is clearly in the stream of commerce and liable under various provisions of Illinois law.

First, Walgreens is liable to Plaintiff and not excused by the "learned intermediary" doctrine because (a) the policies underlying strict liability are fully applicable to Walgreens, (b) the "learned intermediary" defense has no applicability where the manufacturer gave no warning whatsoever to physicians, and (c) Walgreens had a duty to provide warnings to Plaintiff's provider. No Illinois court has excused a downstream seller in the stream of commerce in this context, which necessarily means it is at least *possible* (and not "utterly groundless") for Walgreens to be liable on this theory. Second, even if the "learned intermediary" doctrine applies, Walgreens knew or should have known that Plaintiff was susceptible to injury from Depo-Provera and should have

warned Plaintiff and/or her physician.  Third, because Defendants' argument, if accepted, would require dismissal of virtually *every* claim in this action—not only those of the Illinois Defendant—it falls afoul of the common-defense doctrine.  And, finally, because the fraudulent joinder doctrine flouts the text of the diversity statute, it should never be applied.  Accepting both the facts and the law in Plaintiff's favor—as required under Seventh Circuit precedent—it is obvious that a state court could *possibly* accept Plaintiff's arguments.  That is the end of the remand inquiry.

## ARGUMENT

**I.     The Forum Defendant Rule Prohibits Removal.**

"A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title ***may not be removed*** if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).  This "forum defendant rule" is "designed to preserve the plaintiff's choice of forum," and "disallows federal removal premised on diversity" when the rationale for allowing removal—protecting out-of-state defendants against the bias of local courts—"is not a concern because at least one defendant is a citizen of the forum state."  *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013).  The rule is clear: when the case includes a forum defendant, it *cannot* be removed to federal court.

As such, while a court may sometimes rely on the so called "fraudulent joinder doctrine" to disregard the citizenship of a fraudulently joined defendant, this doctrine is limited "to the context of determining whether complete diversity exists *for the purpose of diversity jurisdiction. It does not permit a court to disregard the citizenship of a defendant for purposes of avoiding the forum defendant rule* where complete diversity exists."  *Davenport v. Toyota Motor Sales*, No. 09-cv-532, 2009 WL 4923994, at *3 (S.D. Ill. Dec. 14, 2009).  The Seventh Circuit has never found that fraudulent joinder applies to defeat the foreign defendant rule and has cautioned against "a

nontrivial expansion of the removal right." *Morris*, 718 F.3d at 668 (discussing whether to extend the doctrine to a diverse forum defendant but not deciding because it was not properly addressed below). This is especially so given the "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts." *Id.* at 670; *see also Long v. John Crane, Inc.*, No. 23-cv-1152, 2023 WL 4558513, at *5 (S.D. Ill. July 17, 2023) (finding defendant did not carry its burden to show the fraudulent joinder doctrine applies in the forum defendant rule context); *Antcliff v. Custom Blending & Packaging of St. Louis, LLC*, No. 18-cv-1776, 2019 WL 276156, at *2-3 (S.D. Ill. Jan. 22, 2019) (heeding *Morris*'s caution and not expanding the fraudulent joinder doctrine).

Ms. Daniels filed her case in Illinois state court on December 31, 2024, and served Walgreens on January 9, 2025, evidencing Plaintiff's intent to proceed against Walgreens just like every other defendant. Because Walgreens is a citizen of Illinois, who was properly joined and served, the Court should enforce the forum defendant rule and remand the case to state court, Plaintiff's chosen forum. *Davenport*, 2009 WL 4923994, at * 3.

## II. There Is No Diversity Jurisdiction Because Walgreens Is a Properly Joined Defendant.

The jurisdictional principles governing this Motion are simple, clear, and rulelike. Indeed, "the first virtue of any jurisdictional rule is clarity and ease of implementation." *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005); *see also In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987) ("The more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity." (internal citations omitted)). Under Seventh Circuit precedent, Defendants "must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision,

the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (internal citation omitted).

The burden is all the heavier because Defendants must come forward with "affirmative proof of fraudulent joinder [that] must be clear and convincing." *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 844 (S.D. Ill. 2008). Defendants' "burden of proof to produce clear and convincing evidence of fraudulent joinder . . . is not met by pointing to supposed defects in Plaintiffs' pleading of their claims against the diversity-defeating Defendant." *Hardaway v. Merck & Co.*, No. CIV.06-465, 2006 WL 2349965, at *2 (S.D. Ill. Aug. 11, 2006). Defendants must affirmatively show that the defect identified *could not be cured* by repleading. *Korein Tillery, LLC v. Advanced Analytical Consulting Grp., Inc.*, No. 17-CV-468, 2017 WL 4005926, at *4 (S.D. Ill. Sept. 12, 2017) (while removing Defendants' argument "may be enough to support dismissal of the complaint—without prejudice and with leave to replead—this pleading shortcoming does not show by clear and convincing evidence that Korein Tillery cannot establish a fraud cause of action against Girnius. Indeed, that is why a court is likely to allow Korein Tillery leave to replead claims against Girnius.").

"Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 846 (S.D. Ill. 2006) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Put simply, there is a strong presumption in favor of remand. Afterall, the plaintiff is the master of her complaint. *In re Comcast Cellular Telecomm. Litig.*, 949 F. Supp. 1193, 1198 (E.D. Pa. 1996). And Plaintiff is empowered to choose her own forum in which to proceed. *Schur v. L.A. Weight Loss Crs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). Here, Plaintiff chose Illinois state court.

### A. Walgreens Is Strictly Liable for Plaintiff's Injuries and Not Excused By the Learned Intermediary Defense.

Illinois has adopted § 402A of the Restatement (Second) of Torts, which subjects manufacturers and sellers of a product to strict liability for product defects. *Lamkin v. Tower*, 563 N.E.2d, 449, 457 (Ill. 1990). Under strict product liability, "each of the defendants in the product's chain of distribution may be held jointly and severally liable, ***regardless of its actual culpability in causing the injury***." *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 968 (Ill. 2018) (emphasis added). This includes "***all persons in the distributive chain*** . . . including suppliers, distributors, wholesalers and retailers." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983) (emphasis added).

Decades of Illinois precedent explain the fundamental policy interests underlying the strict product liability regime: "to provide full compensation to plaintiffs injured due to defective or unsafe products whenever possible based on differences in the parties' degree of culpability." *Cassidy*, 120 N.E.3d at 968-69; *id.* at 967 ("The purpose of strict liability in tort is to place the loss caused by defective products on those who create the risks and reap the profits by placing such products in the stream of commerce." (*quoting Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 53 (Ill. 1997)). As between injured plaintiffs and those entities in the chain of commerce, Illinois has unequivocally determined that manufacturers, distributors, and sellers bear the responsibility because

> (1) the public interest in human life and safety demands broad protection against the sale of defective products; (2) the manufacturer solicits and invites the use of his products by representing that they are safe and suitable for use; and (3) the losses caused by defectively dangerous products should be borne by those who have created the risks and reaped the profits by placing the products into commerce.

*Cassidy*, 120 N.E.3d at 967-68. Crucially, Illinois has consistently held that even sellers who do not create the defect are liable for harms caused by defective products because, as between the

5

seller and the injured plaintiff, the seller is in the best position to prevent a defective product from entering the stream of commerce, may adopt inspection procedures, and is more able to distribute losses resulting from defective products. *Id.* at 968.

As a seller of Plaintiff's Depo-Provera, Walgreens is strictly liable for Plaintiff's injuries. And even if Walgreens may ultimately avoid liability, it is a properly joined defendant today and there is no diversity jurisdiction.

### 1) Walgreens Is Strictly Liable for Plaintiff's Injuries.

"A seller who places his product in the stream of commerce has a non-delegable duty to make sure his product is reasonably safe." *Malone v. BIC Corp.*, 789 F. Supp. 939, 941 (N.D. Ill. 1992) (citing *Doser v. Savage Mfg. & Sales, Inc.*, 568 N.E.2d 814, 819 (Ill. 1990)). A plaintiff may prove a product was defectively designed by showing either that the product fails the consumer-expectation test, or by showing that the risk of danger inherent in the product outweighs its benefits. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 254-56 (Ill. 2007).

The consumer-expectations test requires a plaintiff to prove that "the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* at 256. Here, Ms. Daniels alleges just that, *see generally* Compl. ¶¶ 156-77: Ms. Daniels used Depo-Provera for contraception (in an intended or reasonably foreseeable manner), Compl. ¶¶ 94-97, 111-12; the Depo-Provera sold by Walgreens to her was defective, unreasonably dangerous, and unaccompanied by proper and adequate warnings regarding all possible adverse side effects associated with its use, *id.* ¶¶ 157, 159-66; the use of Depo-Provera caused unreasonable and dangerous side effects, *e.g.*, *id.* ¶ 159, in that it caused her meningioma and related sequela, *id.* ¶¶ 98-110, 116; and thus, the product failed to perform as an ordinary consumer would expect, *id.* ¶ 164, 167, 169.

Under the risk-utility test, a plaintiff must show that the "magnitude of the danger outweighs the utility of the product, as designed." *Calles*, 864 N.E.2d at 259. Again, Plaintiff easily meets this hurdle, especially on a motion to remand where the facts and law are construed in her favor. *Poulos*, 959 F.2d at 73; *see* Compl. ¶ 167-68, 170-72. As such, Walgreens is strictly liable for Plaintiff's injuries.

### 2) Even if Walgreens May Ultimately Avoid Liability, It Is a Proper Defendant That Was Not Fraudulently Joined.

To ameliorate the somewhat harsh effects of strict product liability on some of the less culpable entities, Illinois also recognizes a limited distribution of liability. The "seller's exception," 735 ILCS 5/2-621, allows a seller to seek dismissal from a complaint if it has certified that the manufacturer has been correctly identified. But dismissals under 735 ILCS 5/2-621 are provisional, not final: a "plaintiff could move to reinstate it later in the proceedings." *Benson*, 884 F. Supp. 2d at 716 (granting remand). The Illinois Supreme Court has said such dismissals may not even be certified for appeal under the state's Rule 54(b) analog, because a "dismissal under section 2–621 does not dispose of the rights of the parties. Rather, the statute clearly contemplates the possibility of further action."). *Kellerman v. Crowe*, 518 N.E.2d 116, 118 (Ill. 1987). As such, dismissals under section 2-621 are not grounds for removal based on fraudulent joinder. *See, e.g.*, *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1050-52 (S.D. Ill. 2006).

That matters because an important part of Illinois's balanced system is the back-end ability to reinstate retailers if, for example, the statute of repose has run, the identity of the manufacturer is incorrect, the manufacturer "cannot be subject to the jurisdiction of the courts of this State," or the "manufacturer is unable to satisfy any judgment" the plaintiff receives. § 2-621(b)(1)-(4). If a case were removed based on the seller's exception, the plaintiff *would not* be able to "reinstate" the seller, because doing so would destroy the court's subject matter jurisdiction—and that would

be true even if the manufacturers listed are not correct (Plaintiff has no way of verifying this information pre-discovery), they become insolvent, or they are not amenable to personal jurisdiction. And that would leave a plaintiff with no avenue for redress and would be in direct conflict with the fundamental purposes of strict liability law. *See Cassidy*, 120 N.E.3d at 968-69.

For prescription drugs, Illinois also recognizes a limited exception in the learned-intermediary defense, whereby "manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392-93 (Ill. 1987). This is because prescription drugs are likely to be "complex medicines" that require considering the propensities of the drug as well as the special circumstances of the patient. *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1126 (Ill. 2002). As such, courts reason, it makes sense that the manufacturer's warnings flow through the plaintiff's physician. *Id.* Therefore, when the manufacturer of a prescription drug provides sufficient warnings to a plaintiff's prescribing physician, the "learned intermediary" doctrine relieves "the manufacturer and others in the drug's chain of distribution, such as pharmacists," from liability. *Smith v. Merk & Co., Inc.*, 472 F. Supp. 2d 1096, 1098 (S.D. Ill. 2007).

But this exception to strict liability is narrow. There can only be a "learned intermediary" defense if there is a learned intermediary. When a manufacturer does not warn the medical community about a product's risks, the manufacturer "cannot evade its responsibilities" by hoping "that the doctors will learn of the dangers themselves." *Proctor v. Davis*, 682 N.E.2d. 1203, 1213 (Ill. App. Ct. 1997). "Doctors who have not been sufficiently warned of the harmful effects of a drug cannot be considered 'learned intermediaries' and the adequacy of warnings is a question of

fact, not law, for the jury to determine . . . ." *Id.* at 1215; *see also Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 43 (Ill. 2002) (approving *Proctor*). In other words, when the warning is inadequate and the risk not widely known in the medical community, the learned intermediary provides no defense to shield the manufacturer from liability. *See Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F. Supp. 2d 992, 1006 (S.D. Ill. 2012). And if the defense is not available to the manufacturer, it likewise cannot be used by a pharmacy, who has its own independent liability under the product liability laws. *See Rutherford*, 428 F. Supp. 2d at 848-49.

To hold that the learned-intermediary defense is available to non-manufacturers, but not manufacturers, even when there is no learned intermediary, would effectively cut off liability at the manufacturer. And if that manufacturer were unavailable or unavailable to satisfy any judgment, a plaintiff would have no recourse. This is not permitted under Illinois's strict liability regime. Here, Plaintiff Daniels alleges that Defendants knew or should have known that Depo-Provera could cause the development of or substantially contribute to the growth of meningioma. *E.g.*, Compl. ¶¶ 43, 56, 57, 73, 74. Yet, Defendants never warned Plaintiff, other users of Depo-Provera, Plaintiff's physician, or the medical community about those risks. *Id.* ¶¶ 58-61, 69, 72. Instead, Defendants actively concealed from Plaintiff's physicians and the medical community, generally, the true risks associated with Depo-Provera, and those healthcare providers were unaware and could not have learned through reasonable diligence about those risks. *See, e.g.*, *id.* ¶ 113-14. As such, Plaintiff's physicians were not learned intermediaries.

Plaintiff Daniels used Depo-Provera for over thirty years.[1] Compl. ¶ 94. In all her years and the dozens of times she received the prescription and was prescribed and administered Depo-

---

[1] Plaintiff inadvertently omitted an allegation that she used Depo-Provera from 1992 until 2024. This pleading deficiency is not enough to show that Plaintiff's has no cause of action against

9

Provera, Ms. Daniels never received a warning that Depo-Provera could be the cause of her meningioma. And Defendants, including Walgreens, continued to sell the inherently dangerous drug. *Id.* ¶¶ 58, 60. In fact, even after Ms. Daniels suffered through a 12-hour surgery and countless hours of radiation to remove part of her meningiomas, her doctors continued to prescribe, and Walgreens continued to sell Depo-Provera to Ms. Daniels. *Id.* ¶ 102, 108. It is irrelevant that Walgreens had no role in the design, development, manufacturing, or label of Depo-Provera, or that it did not hold the NDA, NOR ¶ 36-38; as a participant in the stream of commerce, Walgreens is strictly liable just like every other entity in the distributive chain, *Cassidy*, 120 N.E.3d at 968 ("each of the defendants in the product's chain of distribution may be held jointly and severally liable, ***regardless of its actual culpability in causing the injury***"); *Hammond*, 454 N.E.2d at 216-17. If a court later determines that sufficient warnings were provided to Plaintiff's prescribing physician, the "learned intermediary" doctrine may then relieve Walgreens, and all Defendants, from liability. That is a merits question, not a basis for finding diversity jurisdiction on the pleadings.

### 3) Walgreens Had a Duty to Warn Plaintiff's Physician.

Furthermore, Walgreens had an independent duty to warn Plaintiff's physician. "[M]anufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." *Happel*, 766 N.E.2d at 1126 (quoting *Kirk*, 513 N.E.2d at 392). In *Happel*, the Illinois Supreme Court explicitly held that pharmacies too are held

---

Walgreens. *See Korein Tillery, LLC*, 2017 WL 4005926, at *4 (while removing Defendants' argument "may be enough to support dismissal of the complaint—without prejudice and with leave to replead—this pleading shortcoming does not show by clear and convincing evidence that Korein Tillery cannot establish a fraud cause of action against Girnius. Indeed, that is why a court is likely to allow Korein Tillery leave to replead claims against Girnius.").

10

to the same standard; as such, pharmacies have no duty to warn *customers* about the dangers of prescription drugs. *Id.*; *see also Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) (discussing the pharmacy's duty to warn a customer). But that does not relieve the pharmacy of any duty to warn the prescribing *physician*. And here, Walgreens had such a duty.

Depo-Provera is available by prescription only and is typically administered in the doctor's office. Compl., Factual Allegations ¶ 7. When a pharmacy sells the drug to the patient, the patient first gets the prescription from her doctor, picks it up from the pharmacy, and then returns to her doctor to have the drug administered. *Id.* Here, that is exactly what happened: Plaintiff Daniels purchased the prescription from Walgreens and then took that prescription back to her doctor to be injected. As such, Walgreens, just like the manufacturer, could have, and *should have*, warned Plaintiff's physicians yet failed to do so. Compl. ¶ 43, 57.

This too compels remand.

### B. Walgreens Knew or Should Have Known That Plaintiff Was Susceptible to Depo-Provera and Had a Duty to Warn Plaintiff or Her Physician.

Even if a learned intermediary existed in this case to shift the duties owed by Defendants, "the scope of the protection provided to pharmacists by the learned intermediary doctrine is limited." *Happel*, 766 N.E.2d at 1128. In *Happel*, the Illinois Supreme Court recognized that "special circumstances" could justify imposing a duty to warn on pharmacists even with a learned intermediary. For example, when a pharmacy knows a prescribed medication is contraindicated for the plaintiff, the pharmacy has an independent duty to warn. *Id.* at 1129. The Seventh Circuit likewise recognizes a variation of this exception:

> What a pharmacy sometimes knows, however, without investigation, and the manufacturer will not know and even a treating physician may not know, is susceptibilies of particular customers of the pharmacy to the side effects of a drug that it sells them—susceptibilities because of other drugs that the pharmacy knows the customer is taking, or a pre-existing physical or mental condition (again known

11

> to it) that makes the drug contraindicated for the customer—and then it must warn either the customer or his physician.

*Walton*, 643 F.3d at 1000. Additionally, "a duty to warn, including in the pharmaceutical context, can be found where there is unequal knowledge of a dangerous condition and the defendant, possessed of that knowledge, knows or should know that harm might or could occur if no warning is given." *Urbaniak v. Am. Drug Stores, LLC*, 126 N.E.3d 561, 566 (Ill. App. Ct. 2019). To determine whether a duty exists, courts look to relevant factors, including "(1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant." *Happel*, 766 N.E.2d at 1123-24.

Ms. Daniels began using Depo-Provera in 1992, Compl. ¶ 94, was diagnosed with a meningioma in 2021, *id.* ¶ 98-100, and had brain surgery in January 2022, *id.* ¶ 102. Even after her surgery, Walgreens continued to sell Depo-Provera to Ms. Daniels. Ms. Daniels properly alleged that Walgreens knew or should have known about the dangers of Depo-Provera. *E.g.*, *id.* ¶¶ 43, 56-67. Furthermore, Walgreens knew that Depo-Provera should be discontinued to slow or stop the growth of a meningioma. *Id.* ¶ 123. Given that Ms. Daniels underwent surgery and radiation in 2022, and was prescribed dozens of related medications that would have been in her pharmaceutical file, it is plausible that Walgreens should have known about Ms. Daniels's "special circumstances" and had a duty to warn of the specific risks.[2] Yet Walgreens provided no warning. Not to Plaintiff and not to her providers, who would have seen and heeded such a warning, *id.*

---

[2] To the extent that Plaintiff failed to plead facts necessary to show, or raise an issue of fact, as to whether Walgreens had notice of Plaintiffs "special circumstances," such failure can be cured by repleading and thus is not proper for a finding a fraudulent joinder. *See Korein Tillery, LLC*, 2017 WL 4005926, at *4.

12

¶¶ 143, 188, 203, 227, especially in this case, where Walgreens sold the product to Plaintiff who then took it back to her physician for the physician to administer the product.

Given Walgreens's position as a seller in the chain of commerce, and its knowledge about Depo-Provera and Ms. Daniels's specific risks, it was foreseeable that Walgreen's failure to provide proper warnings to Plaintiff or her physician would result in a likely injury to Plaintiff. Furthermore, the burden on Walgreens of imposing this duty is minimal: the pharmacist could have added a label to the packaging that the physician would have seen before administering the Depo-Provera, or could have picked up the phone. Walgreens would suffer no greater consequence from imposing a duty here than what Illinois already subjects sellers to under the strict product liability regime.

### C. Learned Intermediary Is Common to Non-Diverse Defendants.

Independently, Defendants' arguments fail to show fraudulent joinder because they are not really about *joinder*, but about the core of the action itself. The Seventh Circuit has explained:

> [A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is **no weaker than** his claim against the diverse defendants. Especially if the claims are identical, the diverse defendants **really are just arguing that the suit has no merit**, period. And that is a ground not for removal but for asking the court in which the suit was filed—the state court—to dismiss the suit.

*Walton*, 643 F.3d at 1001 (emphasis added).

With respect to learned intermediary, Plaintiff's claims against Walgreens are no weaker than her claims against other diverse non-Pfizer Defendants. The "learned-intermediary doctrine doesn't permit distributors to *conceal* a drug's adverse side effects from physicians, pharmacies, and consumers." *Id.* Nor would it permit sellers to conceal a drug's adverse side effects from a plaintiff's physician. *Cf.* (noting that, in that case, the plaintiff alleged that the Bayer defendants,

13

unlike the pharmacy, concealed vital information from the intermediaries). Under such circumstances, the defense does not apply to *any* defendant. *Supra* Section II.A.2.

But when it does apply, "the learned intermediary doctrine is fundamentally a device for shifting liability for harm caused by a product, such as a prescription drug, onto doctors and away from others in the product's chain of distribution." *Brooks v. Merck & Co., Inc.*, 443 F. Supp. 2d 994, 999 (S.D. Ill. 2006). And it "applies exactly the same way as between both [the other manufacturers and distributors] and Walgreens." *Id.* at 1003. If the court goes on to find that the manufacturer properly warned the physicians, the manufacturer, the distributors, *and* Walgreens will be absolved of liability. Even if the manufacturer were held to a higher standard as the ultimate concealer, under Defendants' reading, Plaintiff's "allegations relate primarily to the conduct of Pfizer, the brand manufacturer and NDA holder." NOR ¶ 38. As such, the claims against Greenstone, Viatris, Prasco, Pharmacia, and Pharmacia & Upjohn would all fall on the same grounds as Walgreens if the learned intermediary was a bar here. In short, to deny remand, a federal court would need to rule that the bulk of the allegations are frivolous as to nearly every defendant, and that almost all Defendants, not merely the Illinois resident, were fraudulently joined. *See McNary v. Cottrell, Inc.*, 2009 WL 5066650, at *4 (S.D. Ill. 2009) (because *two* defendants "share a common defense," the case must be remanded; "[t]hat other Defendants—Cottrell, Cassens and Unknown Owners/Lessor—do not share this defense is irrelevant to the Court's determination of whether it possesses jurisdiction over this action"); *Hauck v. ConocoPhillips Co.*, 2006 WL 1596826, at *7 (S.D. Ill. 2006) (remanding on this rationale, even though a limited number of claims would "remain unscathed").

14

Because "the learned intermediary doctrine clearly is an issue that goes not to the Court's jurisdiction but to the merits of Plaintiff's claims for relief," *Brooks*, 443 F. Supp. 2d at 1003, Defendants' removal attempt here must fail. *See also Robinson*, 533 F. Supp. 2d at 842.

### D. Fraudulent Joinder Is Extra Textual and Should Not Be Applied.

The removal statute, 28 U.S.C. § 1441, provides that a defendant may remove an action to federal court if it is one "of which the district courts of the United States have original jurisdiction." Where removal is based on diversity, the statute expressly (and exclusively) allows a court to disregard only "the citizenship of defendants sued under fictitious names." 28 U.S.C. § 1441(b)(1). Under the plain text of the statute, removal is plainly improper. Had Plaintiff filed her action *originally* in federal court, Defendants' assertion that Walgreens should easily prevail on the merits would not supply the complete diversity necessary to confer subject-matter jurisdiction. 28 U.S.C. § 1332. And Walgreens is, in fact, named Walgreens. There is nothing fictitious about its name that permits a court to blind itself to its Illinois citizenship.

The fraudulent-joinder doctrine emanates from the now-discarded 1875 version of the removal statute, which authorized removal of a controversy which was "wholly between citizens of different states." *See Pirie v. Tvedt,* 115 U.S. 41, 42 (1885). That statutory text required federal courts to determine if an action should be divided where there was no prospect of proceeding severally. *Id.* The current version of the removal statute does not authorize that inquiry. Just the opposite. Congress specified the one and only means of disregarding the citizenship of a named defendant. 28 U.S.C. § 1441(b)(1). *Expressio unius exclusio alterius*.

15

## CONCLUSION

For the foregoing reasons, this action should be remanded to the Circuit Court of St. Clair County.

Dated February 9, 2025                  Respectfully submitted,

                                        */s/ John J. Snidow*

                                        KELLER POSTMAN LLC
                                        John J. Snidow
                                        jj.snidow@kellerpostman.com
                                        1101 Connecticut Avenue, N.W., Suite 1100
                                        Washington, D.C. 20036
                                        Telephone: 202-918-1123

                                        *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2025 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                Respectfully submitted,

                                                */s/ John J. Snidow*