**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| VICKI DANIELS,<br><br>               **Plaintiff,**<br><br>v.<br><br>PFIZER, INC., GREENSTONE, LLC, VIATRIS INC., PRASCO, LLC, PHARMACIA LLC, PHARMACIA & UPJOHN COMPANY, LLC, and WALGREENS CO., INC.,<br><br>               **Defendants.** | Case No. 3:25-cv-188-NJR |

**<u>VIATRIS INC. AND GREENSTONE LLC'S RESPONSE IN OPPOSITION TO</u>**
**<u>PLAINTIFF'S MOTION TO REMAND</u>**

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

III. ARGUMENT ................................................................................................................... 5

    A. The "Forum Defendant Rule" Does Not Bar Application of the Fraudulent Joinder Doctrine. ................................................................................................... 5

    B. The Learned Intermediary Doctrine Bars Plaintiff's Warnings Claims Against Walgreens. ................................................................................................ 7

    C. Walgreens Cannot Be Held Liable to Plaintiff Under Any Theory of Liability. ..................................................................................................... 11

    D. The Common Defense Rule Does Not Preclude Dismissal of Walgreens. ..... 14

    E. The Fraudulent Joinder Doctrine is Not "Extra Textual." .............................. 17

IV. CONCLUSION .............................................................................................................. 17

## I.     INTRODUCTION[1]

The Court should disregard Defendant Walgreen Co., Inc.'s ("Walgreens") citizenship in this case because Walgreens has been fraudulently joined. Plaintiff's argument in support of remand is that the doctrine of fraudulent joinder either does not or should not exist. But the courts of the Seventh Circuit disagree. Both the Court of Appeals in *Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011), and numerous Courts in this District—as well as virtually every other federal court in the United States—have embraced fraudulent joinder where, as here, the claims against the in-state defendant are meritless.

As set forth in Plaintiff's Complaint, Walgreens' only involvement in this case is that it was a pharmacy where Plaintiff allegedly filled some of her prescriptions for the injectable contraceptive drug, Depo-Provera. Plaintiff's claims against the Defendants are centered on failure to warn and design defect. Walgreens, however, did not and could not play any role in designing Depo-Provera or have any involvement with product's the warning labels, and Plaintiff does not contend otherwise. Accordingly, Plaintiff's only possible theory of recovery against Walgreens is premised upon Walgreens' alleged failure to warn Plaintiff of a supposed risk posed to her by Depo-Provera. This is an insurmountable burden because, under controlling Illinois law, Walgreens had a duty to warn Plaintiff of the potential side effects of Depo-Provera only *if* Walgreens had some patient-specific information to conclude that Plaintiff was susceptible to a particular risk or had a preexisting condition which rendered the Depo-Provera contraindicated. *See Walton*, 643 F.3d at 1000; *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002).

---

[1] In filing this Response in Opposition, Defendants expressly reserve all rights and defenses, including objections to personal jurisdiction, that can or will be raised at the appropriate time.

Here, there is no reasonable possibility that Plaintiff could ever recover against Walgreens because Plaintiff does not allege Walgreens was aware of any patient-specific susceptibilities or preexisting conditions that would have rendered Depo-Provera contraindicated for her use, nor does Plaintiff suggest that Walgreens was negligent in its handling of the medication. Because none of these factors are present, the learned intermediary doctrine bars all of Plaintiff's claims against Walgreens. Further, there is no dispute that all other jurisdictional and procedural prerequisites to removal have been satisfied. As a result, this Court should deny Plaintiff's Motion, dismiss Walgreens with prejudice, and exercise subject matter jurisdiction over this case.

## II.    BACKGROUND

Depo-Provera is the brand name for depot medroxyprogesterone acetate ("DMPA"), an FDA-approved, prescription-only medication. The drug was first marketed in the United States for the prevention of pregnancy in 1992 following the FDA's approval of New Drug Application ("NDA") No. 20-246.

This product-liability action was initiated by Plaintiff, Vicki Daniels, in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on December 31, 2024. (*See generally*, Dkt. 1-1, Compl.) Plaintiff asserts various causes of action against (i) Pfizer, Inc. ("Pfizer"), and its affiliates, as the manufacturer of brand-name Depo-Provera, (ii) Greenstone LLC ("Greenstone"), Viatris Inc. ("Viatris"), and Prasco, LLC ("Prasco") as purported distributors of the authorized generic version of the drug, and (iii) Walgreens Co., Inc. ("Walgreens"), which Plaintiff identifies as the pharmacy where she purchased the drug. Walgreens and Plaintiff are both Illinois citizens, which ostensibly destroys diversity jurisdiction here, however, Walgreens has been fraudulently joined.

In short, Plaintiff alleges that her use of brand-name Depo-Provera and/or auhtorized

generic DMPA over an unspecified period of time beginning in 1992 caused meningioma among other personal injuries. (Dkt. 1-1, Compl. ¶¶ 2, 94.) While 6 of the 7 causes of action in the Complaint are ostensibly asserted against all "Defendants," nearly all of the factual allegations of wrongdoing relate to the alleged conduct of Pfizer and, to a lesser extent, Greenstone and Prasco. (*Id.* ¶ 18.)

For example, Plaintiff alleges that the Depo-Provera NDA is held by Pfizer, who manufactured and sold the brand name drug. (*Id.* ¶ 18.) According to the Complaint, at various times from 2004 to the present, Greenstone and Prasco distributed authorized generic DMPA, which was also manufactured and labeled by Pfizer.[2] (Compl. ¶¶ 87-90.) Plaintiff has alleged that, during the relevant time period, Greenstone was "effectively a department within Pfizer." (*Id*. ¶ 19.) Further, Plaintiff alleges that Pfizer, "at minimum had control over [Greenstone and Prasco]," and that "Pfizer at all times had control of the labels of the authorized generics that were manufactured at its facilities." (*Id.* ¶ 90). Likewise, Plaintiff asserts that "Pfizer had at all times a duty to change the label knowing that the Authorized Generic Defendants, with whom it was in contract and receiving revenue from the sale of the authorized generic DMPA, were selling the authorized generic without warning of meningioma risk." (*Id.* ¶ 91.)

In contrast to these, and numerous other specific allegations against Pfizer, Greenstone, and Prasco, Walgreens is substantively mentioned in the Complaint only 3 times—each relating to the allegation that Plaintiff purchased DMPA at a Walgreens pharmacy in Illinois. (*Id.* ¶¶ 17, 30, and 96.) Notably, Plaintiff's 56-page, 258-paragraph Complaint contains ***no specific***

---

[2] Viatris has never held an approved application to market Depo-Provera or DMPA, nor has it ever designed, manufactured, distributed, or sold the medication. Its only alleged involvement in this litigation is that, in November 2020, Greenstone became an indirectly wholly owned subsidiary of Viatris. (Compl. ¶ 22.) But, by that time, Greenstone had already ceased its role as distributor of generic DMPA. (Id. ¶ 25.) Viatris is not a proper party to this litigation, but its presence does not affect the Court's subject matter jurisdiction, therefore the issue can be resolved by the MDL court.

3

*allegations of misconduct by Walgreens*. Moreover, the generalized allegations of misconduct against all "Defendants"—such as the allegation of fraudulent concealment and misrepresentation of pertinent information regarding DMPA from Plaintiff's "healthcare providers"—are plainly made against Pfizer, Greenstone, and Prasco, and not Walgreens, which was itself one of Plaintiff's "healthcare providers." (*see id.* ¶¶ 118-128; 235-257.)

Generally, the allegations asserted in this case are not unique. There are now approximately 100 cases pending nationwide involving similar allegations and the vast majority of those have been consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") in the U.S. District Court for the Northern District of Florida before the Hon. Judge M. Casey Rodgers (the "Depo-Provera MDL"). This case is unique, however, insofar as it is one of the only DMPA actions in the country to name a pharmacy as a defendant. Notwithstanding Plaintiff's counsel's tactical decision to circumvent federal jurisdiction, the claims against the Removing Defendants, Pfizer, and Prasco belong in federal court and should be litigated alongside the many similar cases in the Depo-Provera MDL.

Accordingly, on February 7, 2025, Defendants Greenstone and Viatris ("Removing Defendants") timely removed the case to this Court on the basis that Walgreens was fraudulently joined by Plaintiff to destroy federal diversity jurisdiction. (*See generally* Dkt. 1, Notice of Removal.) (*See generally* Dkt. 6, Pl's Mot. to Remand (the "Motion"). Two days later, Plaintiff filed an "emergency motion" to remand the case. (*See generally* Dkt. 6, Pl's Mot. to Remand (the "Motion")). Plaintiff also requested expedited briefing on the Motion, which the Court denied. (Dkt. 23.) To date, no party has responded to Plaintiff's Complaint. The case has been tagged as a related action and is pending transfer by the JPML to the MDL Court.

4

### III. ARGUMENT

Fraudulent joinder has been adopted by the Courts of this Circuit as an important tool to counter the effects of forum shopping. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (holding a court may disregard the citizenship of a defendant that has been fraudulently joined to an action); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (fraudulent joinder will apply when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." ); *Bahalim v. Ferring Pharmaceuticals, Inc.*, 2017 WL 118418 (N.D. Ill. Jan. 12, 2017) ("where a plaintiff joins a non-diverse defendant, "his interest in selecting the forum is less compelling."). Accordingly, a removal petition must be analyzed fairly and objectively to ensure that a defendant's right to a federal forum is preserved:

> The removal process was created by Congress to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court."

*Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) (internal citations omitted).

Plaintiff raises a litany of arguments based on what she wants the law to be rather than what it is. Each of these arguments fails.

#### A. The "Forum Defendant Rule" Does Not Bar Application of the Fraudulent Joinder Doctrine.

The "forum defendant rule" is a limitation on a party's right to remove a case on the basis of diversity jurisdiction where complete diversity is present and one of the defendants is a citizen of the forum state. Specifically, under 28 U.S.C. § 1441(b)(2), a case "shall be removable only if none of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." (emphasis added). In essence, the forum defendant rule is an

"additional hurdle" to removal and preserves a plaintiff's choice of forum. *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). The forum defendant rule does not go directly to the court's jurisdiction over a case; rather, it is a procedural basis for remand that is waivable. *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 380 (7th Cir. 2000); *Long v. John Crane, Inc.*, 2023 WL 4558513 (S.D. Ill. July 17, 2023).

Here, Plaintiff oversimplifies and misapplies the forum defendant rule. Specifically, the rule is not triggered merely because one of the defendants is a citizen of the forum state, as Plaintiff suggests. The key tenant of the rule is that the party whose presence triggers the rule must have been ***properly*** joined and served. Where a party is ***fraudulently*** joined, then the rule simply does not apply. The fraudulent joinder doctrine is appropriate where a plaintiff names a non-diverse, in-state defendant but has no viable claims against them. "A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). Evidence of this fact includes, but is certainly not limited to, the wealth of case law analyzing the exact issue present here – whether Walgreens or other in-state pharmacies were fraudulently joined to actions that in-state plaintiffs filed against out-of-state pharmaceutical manufacturers and/or distributors. *See Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011); *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, 629 F. Supp. 2d 1025 (S.D. Ill. 2010); *Aranda v. Walgreen Co.*, 2012 WL 1884737, *5 (S.D. Ill. May 23, 2012); *Martinez v. Mylan Pharmaceuticals, Inc.*, Case No. 21-cv-6329 (N.D. Ill. June 15, 2022). "Under the fraudulent joinder doctrine . . . an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has no chance of success." *Morris*, 718 F.3d at 666 (internal quotations omitted). The doctrine was designed to

6

"strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove." *Id.* citing 14B Wright, Miller, Cooper & Steinman, § 3723 pp. 788–93.

The cases relied upon by Plaintiff are factually distinct from this matter in that they involved parties who were completely diverse. For example, in *Morris*, the Seventh Circuit determined whether fraudulent joinder applied to disregard an in-state defendant's citizenship whose presence ***did not*** destroy complete diversity. *Morris*, 718 F.3d at 666. The court nonetheless acknowledged an out-of-state defendant's right to remove in the face of the joinder of a nondiverse defendant against whom the plaintiff could not possibly recover. *Id*. Similarly, in *Davenport*, the court also emphasized the viability of fraudulent joinder as a basis to establish diversity jurisdiction, while holding that it may not be used to disregard a defendant's citizenship in order to avoid the forum defendant rule where complete diversity already exists. *Davenport v. Toyota Motor Sales*, 2009 WL 4923994 at *3 (S.D. Ill. Dec. 14, 2009). These cases are inapposite.

Plaintiff's freedom to choose her own forum is not absolute. Removing Defendants are not citizens of Illinois. The doctrine of fraudulent joinder permits Removing Defendants to challenge the viability of Plaintiff's claims against Walgreens where the improper presence of Walgreens as a defendant prevents this matter from being litigated where it belongs: in federal court. Accordingly, the forum defendant rule is inapplicable here and does not preclude the application of the fraudulent joinder doctrine.

    **B.**     **The Learned Intermediary Doctrine Bars Plaintiff's Warnings Claims Against Walgreens.**

Next, Plaintiff contends that the imposition of strict liability on entities involved in a product's chain of distribution precludes application of fraudulent joiner. Yet, Plaintiff barely

7

acknowledges the controlling authority that is directly on point concerning claims against a pharmacy for failure to warn of potential risks related to a prescription drug. *See Happel*, 766 N.E.2d 1118; *Walton*, 643 F.3d 994. Moreover, Plaintiff fails to explain why these precedential decisions applying the learned intermediary and fraudulent joinder doctrines do not merit the dismissal of Walgreens in this case. In short, *Happel* and *Walton* establish that pharmacies have no general duty to warn customers of potential side effects of drugs. Instead, a duty only attaches where very specific facts are met, and none of those facts are alleged here. As a result, the learned intermediary doctrine applies to bar all claims against Walgreens, and dismissal based on fraudulent joinder is appropriate.

In Illinois, a pharmacy's duty to warn customers of allegedly dangerous side effects of prescription drugs is "regarded as a narrow one." *Urbaniak v. American Drug Stores, LLC*, 126 N.E.3d 561, 566 (Ill. App. 2019). In *Happel*, plaintiff was allergic to aspirin, ibuprofen, and acetaminophen. *Id.* at 1120. She called her physician, who was aware of her allergy, with complaints of menstrual cramps and he prescribed Toradol. *Id.* at 1121. Toradol is contraindicated for people who are allergic to NSAIDs. *Id.* at 1120. The prescription was called into and filled by the Wal-Mart pharmacy which was aware of plaintiff's allergy as well because each time a customer picked up a prescription, the pharmacist asked the customer to disclose any known allergies. *Id.* at 1121. The Toradol bottle did not contain a warning about contraindications. *Id.* at 1122. Plaintiff ingested the medication and suffered anaphylactic shock. *Id.* On appeal after Wal-Mart's award of summary judgment was reversed by the Court of Appeals, the Illinois Supreme Court analyzed whether the pharmacy owed plaintiff "an obligation of reasonable conduct." *Id.* at 1123. The fact that the pharmacy affirmatively elicited information about a patient's known allergies created an obligation to warn of known contraindications to those allergies. *Id.* at 1125.

8

Thus, given the circumstances, Wal-Mart had a "narrow duty to warn" plaintiff that Toradol was contraindicated for patients with an allergy to NSAIDs. *Id.* at 1129.

Almost 10 years after the Illinois Supreme Court's decision in *Happel*, the United States Court of Appeals for the Seventh Circuit reaffirmed that pharmacies have no general duty to warn customers of potential side effects of drugs under Illinois law. *Walton*, 643 F.3d at 1000. In *Walton*, the Bayer defendants removed the case on the basis of diversity jurisdiction, alleging that the in-state defendant-pharmacy was fraudulently joined. *Id*. at 977. Importantly, the Bayer defendants consisted of **distributors** of the at-issue contraceptive product. The district court denied remand. On appeal, the Seventh Circuit recognized that it "would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs." *Id*. *Walton* recognized just one limited exception to the applicability of the learned intermediary doctrine: A pharmacy has a duty to warn its customer of potential risks of a drug if the pharmacy has specialized knowledge about that patient. Specifically, where the pharmacy knows, without investigation, either that (i) its customer has a susceptibility to a particular risk of a drug due to the customer's prescription of another drug that it sells him/her, or (ii) the customer has a preexisting physical or mental condition that makes the drug contraindicated for the customer. *Id.* Because plaintiff in *Walton* "[did not] allege that the pharmacy knew anything about her susceptibility" to the purported side effect of the medication at issue, the pharmacy "had the full protection of the learned intermediary doctrine." *Id.* at 1000-01. As a result, "the district court was right to invoke fraudulent joinder as a ground for dismissing [the pharmacy] from the case, with prejudice, leaving only diverse defendants." *Id.* at 1001. Further, the Court considered, and rejected, plaintiff's argument that the distributor defendants and the pharmacy defendant were

9

similarly situated. *Id.*

Courts in this jurisdiction have subsequently applied *Walton* and *Happel* to find that a pharmacy is fraudulently joined in a product-liability action unless a pharmacy has some patient-specific information to trigger a duty to warn or the pharmacy was independently negligent in the handling of the medication, thereby contributing to the plaintiff's harm. *In re Yasmin & Yaz*, 2012 WL 2135281, at *6-7 (finding pharmacy fraudulently joined to product-liability action because pharmacy had no duty to warn patient regarding alleged risks associated with prescription oral contraceptive); *Aranda*, 2012 WL 1884737, at *5 (same relating to prescription medication); *Martinez v. Mylan Pharmaceuticals, Inc.*, No. 21-cv-6329 (same).

Here, the limited duty Walgreens owed to Plaintiff Vicki Daniels is clear and unambiguous. Walgreens was only required to warn Plaintiff of possible defects and dangers of Depo-Provera if it knew her to have susceptibilities or pre-existing conditions that made the drug contraindicated for her. Plaintiff's Complaint does not allege that Walgreens had any information indicating that Plaintiff was particularly susceptible to injury from taking Depo-Provera,, nor are there allegations that she had a pre-existing physical or mental condition that made Depo-Provera contraindicated for her.[3] Accordingly, the learned intermediary doctrine bars Plaintiff's failure to warn claims and there is no possibility that Plaintiff can recover against Walgreens as a matter of law.

Plaintiff cites to *Rutherford v. Merck & Co., Inc.* for the proposition that, the learned intermediary doctrine is not an available defense to a manufacturer if the patient's physician was not warned of the risk, the learned intermediary doctrine must likewise be unavailable to a

---

[3] Plaintiff asserts in her Motion, although not in her Complaint, that the alleged causal relationship between long-term DPMA exposure and the development of meningiomas somehow meets the susceptibility requirement and would have rendered DPMA contraindicated for Plaintiff. This circular argument is nonsensical and, in any event, is plainly at odds with the standard applied in *Walton* and its progeny.

10

pharmacy in those circumstances. 428 F. Supp. 2d 842 (S.D. Ill. 2006). *Rutheford*, however, is distinguishable on the facts: unlike here, the *Rutheford* plaintiffs alleged that the pharmacies "knew about the health histories of plaintiffs and knew that [the medication at issue] was contraindicated" for them. 428 F. Supp. at 847. More significantly, the *Rutherford* case predates the Seventh Circuit's decision in *Walton*, which rejected that argument, and should, therefore, be afforded no weight on this point. It is broadly accepted in this Circuit that, under *Happel* and *Walton*, Illinois's learned intermediary doctrine shields a pharmacy from liability for failing to warn a customer or her physician about the alleged risks associated with a prescription drug absent facts fitting the narrow exception articulated in *Walton*, which have not been pled here. *Walton*, 643 F.3d at 1000; *Urbaniak,* 126 N.E.3d at 566 ("Because of the learned intermediary doctrine, a pharmacist generally has no independent duty to warn a consumer about the potential dangers of a prescribed drug.").). As a result, Walgreens cannot be held liable under a failure to warn theory of liability.

### C. Walgreens Cannot Be Held Liable to Plaintiff Under Any Theory of Liability.

Similarly, there is no reasonable possibility that Plaintiff can prevail on her common law negligence claim against Walgreens because, under Illinois law, a seller of a product has no duty to warn of a particular hazard in a product unless the defendant "knows or should know that injury may occur if no warning is given." *Carrizales v. Rheem Mfg. Co., Inc.*, 589 N.E.2d 569, 574 (Ill. Ct. App. 1991). Illinois law is clear that a seller is under no duty "to inspect every article he sells" and cannot be "compelled to look for defects" in products that it does not manufacture by performing "special tests." *Kirk v. Stineway Drug Store Co.*, 187 N.E.2d 307, 313 (Ill. App. Ct. 1963); *Rahn v. Gerdts*, 455 N.E.2d 807, 810-11 (Ill. App. Ct. 1983) (holding that a retailer is not under "any duty to generally inspect and discover defects"); *cf. Burgess v. Montgomery Ward & Co.*, 264 F.2d 495, 497 (10th Cir. 1959) (holding that it would be "completely unreasonable to

11

expect the shopkeeper to perform the inspection or test which would have revealed to an expert the defect in the ladder rail"); *Ziglar v. E. I. Du Pont De Nemours & Co.*, 280 S.E.2d 510, 514 (N.C. App. 1981) (holding that the retailer of an inherently dangerous toxic substance was under no duty to detect or remedy hidden defects); *Odum v. Gulf Tire & Supply Co.*, 196 F. Supp. 35, 36 (N.D. Fla. 1961) (stating "a retailer or wholesaler is not under a duty to inspect manufactured articles of a complex nature for defects which are latent"); *Meyer v. Rich's Inc.*, 12 S.E.2d 123, 123 (Ga. App. 1940) (recognizing that a seller of men's suits had no duty to analyze the suit chemically and was therefore not liable for buyer's injuries caused by poisonous dye and chemicals within the suit).

As Walgreens was under no duty to inspect the drug at issue for potential defects, Plaintiff has failed to set forth a viable cause of action for negligence premised on failure-to-warn grounds. Notably, Plaintiff does not even appear to contest this point.

Likewise, Plaintiff cannot recover against Walgreens under design defect or misrepresentation theories of liability because Walgreens' only role in this case is as the retailer that dispensed Depo-Provera to Plaintiff. Nearly 50 paragraphs in the Complaint are dedicated to the history of the development of Depo-Provera as well as the mergers and acquisitions of the companies that created, owned, and distributed the product. (Dkt. 1-1, Compl. ¶¶ 1-21, 58-74.) Walgreens is not alleged to have had any role in the design, development, manufacture, or marketing of Depo-Provera. It did not hold an NDA or an Abbreviated New Drug Application ("ANDA"). Walgreens is not alleged to have had any control over the labeling of Depo-Provera. In the section of the Complaint outlining Plaintiff's criticisms regarding the labeling of Depo-Provera, Plaintiff makes no mention of Walgreens. (Dkt. 1-1, Compl. ¶¶ 75-84.) Instead, these allegations relate primarily to the conduct of Pfizer, the brand manufacturer and NDA holder, as

12

reflected by the headings, "Defendant Pfizer Has at All Relevant Times Been Responsible for the Depo-Provera Label," and, "Defendant Pfizer Controlled the 'Authorized Generics.'" (Dkt. 1-1, Compl. pp. 22, 24.) Further, none of the generalized allegations against all "Defendants" have any rational application to Walgreens. Instead, they are all directed against Pfizer, Greenstone, and/or Prasco.

In contrast, Walgreens is only alleged to have sold Depo-Provera to Plaintiff. (Dkt. 1-1, Compl. ¶¶ 17, 30, 96.) There is not a single averment regarding the safety and effectiveness of Depo-Provera that is attributed by Plaintiff to Walgreens. Indeed, Plaintiff expressly alleges that her medical providers were misled by misrepresentations in the labeling regarding the risks associated with the long-term use of Depo-Provera. (Dkt. 1-1, Compl. ¶ 253 ["In reliance upon the false and negligent misrepresentations and omissions made by the Defendants, Plaintiff and Plaintiff's Healthcare Providers were induced to, and did use Depo-Provera, thereby causing Plaintiff to endure severe and permanent injuries."].) *See Happel*, 766 N.E.2d at 1123 ("A duty to warn exists where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant[,] possessed of such knowledge, knows or should know that harm might or could occur if no warning is given") (internal quotations and citation omitted). As a result, Walgreens could not have breached any duty to Plaintiff relating to the labeling of or representations about the risks associated with using Depo-Provera, which bars any recovery on Plaintiff's failure-to-warn, negligence, and misrepresentation claims against Walgreens. *In Re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Product Liability Litigation*, 692 F. Supp. 2d 1025 (S.D. Ill. Feb. 26, 2010) (holding that plaintiff's boilerplate fraud claim against the defendant-pharmacy could not succeed).

13

### D. The Common Defense Rule Does Not Preclude Dismissal of Walgreens.

The argument that the learned intermediary doctrine bars Plaintiff's claims against Walgreens is not, in this context, an argument that Plaintiff's lawsuit is entirely meritless. The issues relevant to the fraudulent joinder of Walgreens are specific to that Defendant. Plaintiff's attempt to raise the "common defense rule" should be disregarded.

The common defense doctrine is an exception to the fraudulent joinder exception to diversity. *Walton*, 643 F.3d at 1000. In short, there can be no fraudulent joinder "where the defense used to show that no claim can succeed against a non-diverse defendant is shared by all defendants." *Korein Tillery, LLC v. Advanced Analytical Consulting Grp., Inc.*, 2017 WL 4005926, *3 (S.D. Ill. Sept. 12, 2017) (holding that the common defense rule "prohibits a finding of fraudulent joinder where to do so would require a determination on the merits of a colorable defense shared with the diverse defendants"). The common defense rule, however, applies only in limited circumstances. *Bennington v. Aspide Medical*, 2018 WL 11199013, *3 (N.D. Ill. Oct. 26, 2018). Specifically, Plaintiff must demonstrate that "the showing that forecloses the claim against the non-diverse defendant forecloses all claims against all the diverse defendants." *Id.* citing *Korein Tillery, LLC*, 2017 WL 4005926 at *3.

In this case, the common defense rule does not apply because Plaintiff's claims against Walgreens arise from different alleged conduct, and the duty of care owed by Walgreens is different from the duties owed by the manufacturer and distributor defendants. The only specific factual allegations asserted against Walgreens are that Plaintiff filled her prescriptions for Depo-Provera or authorized generic DPMA at a Walgreens pharmacy. (Dkt. 1-1, Compl. ¶¶ 17, 30, and 96 ("Plaintiff received Depo-Provera from Walgreens," she "purchased and consumed Defendants' DMPA products in Illinois, including DMPA Plaintiff purchased from Walgreens,"

14

and she "purchased and was prescribed Defendants' Depo-Provera products at Walgreens.") It is axiomatic that the manufacturer and distributor defendants did not have the same relationship with Plaintiff as her pharmacy of choice. Walgreens' involvement in this case, and its duty to Plaintiff, is separate and distinct from the diverse defendants' involvement as a matter of fact and law. Walgreens' duty to warn Plaintiff would only arise if and when it had patient-specific information to trigger that obligation, or where the pharmacy was independently negligent in the handling of the medication, thereby contributing to the plaintiff's harm. The diverse defendants' duties to Plaintiff are not so narrow and, as evidenced by the allegations in the complaint, go well-beyond what is alleged as to Walgreens. And because Plaintiff asserts claims against the diverse Defendants that are not asserted against Walgreens, such as the strict liability failure to warn claim in Count I and the claims based on the design of Depo-Provera, foreclosing Plaintiff's claims against Walgreens will not foreclose *all* claims against *all* the diverse defendants. *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 742 (N.D. Ill. 2011) (holding that the common defense rule did not apply because application of the fraudulent joinder exception did not defeat all claims against the diverse defendants); *Korein Tillery, LLC*, 2017 WL 4005926 (holding that the common defense did not apply to all defendants because the differences in the duties owed by each defendant "could very well make a difference in whether they can be found liable in this case"). Thus, the common defense rule cannot bar Removing Defendants' assertion of fraudulent joinder.

Further, as in *Walton*, the common defense doctrine does not apply here because of Plaintiff's allegations that the diverse Defendants concealed the risk of meningioma from the public. Significantly, in *Walton*, the Court of Appeals rejected plaintiff's attempt to aggregate the Bayer defendants, which included marketers and distributors of the drug at issue, with the non-diverse pharmacy defendant in order to assert the common defense doctrine. *Walton*, 643 F.3d at

15

1001. Indeed, the plaintiff in *Walton* alleged that the Bayer defendants, and not the pharmacy, concealed information about the drug's side effects. *Id.* The Court in *Walton* found that although the learned intermediary doctrine is a defense typically available to manufacturers and distributors, it does not shield them from liability for concealing known risks. *Id.* As a result, the learned intermediary doctrine was not a defense common to all defendants based on the allegations in the complaint. *Id.*

The same is true here. Plaintiff alleges that the collective "Defendants" failed to investigate the association between Depo-Provera and meningioma, hid the risk of meningioma attendant to ingestion of Depo-Provera, distributed false information about Depo-Provera, and omitted material information about Depo-Provera. (Dkt. 1-1, Compl. ¶¶ 125, 217.) But a fair reading of the pleading, and common sense, indicate that Plaintiff is directing these allegations to Pfizer, the manufacturer and NDA holder, and the authorized generic distributors who were allegedly "controlled" by Pfizer. Indeed, Plaintiff's Complaint contains no specific allegations regarding how Walgreens, as a pharmacy, should have studied a connection between Depo-Provera and meningioma, investigated possible side effects of Depo-Provera, failed to include information about the risks of the medication in its communications to the public, or concealed this information from healthcare providers[4] or the public. Whether the learned intermediary doctrine is a viable defense for diverse defendants will be determined as the case progresses. But on the face of the Complaint, Plaintiff's claims against Walgreens are barred by the defense as a matter of law. The common defense rule is inapplicable to this case.

---

[4] Plaintiff attempts to stretch *Happel's* holding that "pharmacies have no duty to warn *customers* about the dangers of prescription drugs" into "But that does not relieve the pharmacy of any duty to warn the prescribing *physician*. And here, Walgreens had such a duty." Doc. 6 at 9-10 (emphasis original). Plaintiff cites no authority whatever for that novel proposition.

16

### E. The Fraudulent Joinder Doctrine is Not "Extra Textual."

Plaintiff's final, and most outlandish, argument is the assertion that Walgreens' citizenship can only be disregarded if it was sued under a fictitious name based on the "plain language" of the removal statute. 28 U.S.C. § 1441(b)(1). Plaintiff cites no authority for this proposition, apart from a single unrelated case decided 140 years ago. In short, this is an unserious argument that should be disregarded. The fraudulent joinder doctrine has been recognized and applied for decades by the vast majority of federal jurisdictions across the country in addition to the Seventh Circuit. *See, e.g.*, *Knudson v. Systems Painters, Inc.*, 634 F.3d 968 (8th Cir. 2011); *Walker v. Philip Morris USA, Inc.*, 443 Fed. Appx. 946 (6th Cir. 2011); *Travis v. Irby*, 326 F.3d 664 (5th Cir. 2003); *Mayes v. Rapoport*, 198 F.3d 457 (4th Cir. 1999). There is no "textual" argument for why it should not likewise be applied here.

### IV. CONCLUSION

For the foregoing reasons, Removing Defendants respectfully request that the Court deny Plaintiff's Motion to Remand. Defendant Walgreens should be dismissed with prejudice, and this case should be transferred to the MDL Proceeding in the Northern District of Florida.

Dated: March 11, 2025                            Respectfully submitted,

SWANSON, MARTIN & BELL, LLP

 */s/ Gary C. Pinter*
Gary C. Pinter
103 W. Vandalia Street, Suite 215
Edwardsville, IL 62025
Telephone: (618) 655-3131
gpinter@smbtrials.com

Andrew A. Lothson (*pro hac vice*)
330 North Wabash, Suite 3300
Chicago, IL 60611

Telephone: (312) 923-8274
alothson@smbtrials.com
blothson@smbtrials.com

PIETRAGALLO GORDON ALFANO BOSICK
& RASPANTI, LLP

Jason M. Reefer (*pro hac* to be sought)
Frank H. Stoy (*pro hac* to be sought)
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: (412) 263-2000
jmr@pietragallo.com
fhs@pietragall.com

*Attorneys for Defendants, Greenstone LLC and Viatris Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on March 11, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification to all parties' counsel of record.

                                  */s/ Gary C. Pinter*
                                  Gary C. Pinter